**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 13 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-30333 |
| Plaintiff - Appellee, | D.C. No. 3:10-cr-05219-RBL-1 |
| v. | |
| BERNARD CURTIS DAVIS, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted February 4, 2013
Seattle, Washington

Before: FISHER, GOULD, and PAEZ, Circuit Judges.

Bernard Curtis Davis appeals his convictions and sentence for possession of

a firearm as a convicted felon, possession of ammunition as a convicted felon, and

possession of marijuana with intent to distribute. We have jurisdiction under 28

U.S.C. § 1291, and we affirm.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

## 1. The Search

Davis challenges the search of his residence, contending that it violated his Fourth Amendment rights. But the search of Davis's residence was "conducted pursuant to a valid [state] regulation governing probationers" that satisfied the Fourth Amendment's reasonableness standard. *Griffin v. Wisconsin,* 483 U.S. 868, 880 (1987); *see also United States v. Conway*, 122 F.3d 841, 842 (9th Cir. 1997); Wash. Rev. Code § 9.94A.631(1) (permitting the search of a probationer's residence "[i]f there is reasonable cause to believe that an offender has violated a condition or requirement of [his] sentence").[1]

Considering the "totality of the circumstances," *United States v. Arvizu*, 534 U.S. 266, 274 (2002), the officers had reasonable suspicion that Davis was in violation of his probation before they searched his residence. When the officers arrived on the scene of the alleged strong-arm robbery, they saw the victim chasing a green Dodge Neon. The victim described the vehicle and reported a license-plate number that was registered to Davis. Within two hours, the officers arrived at Davis's home and found the car there. When the officers knocked on the door and announced their presence, they saw an unknown male peek through the door and

---

[1] *Conway* analyzed Wash. Rev. Code § 9.94A.195, which was recodified without amendment as Wash. Rev. Code § 9.94A.631.

2

walk away several times. Another officer saw a man—matching Davis's description—attempt to flee out a second-story window. After police entered the home, Davis did not respond, though others throughout the house were awakened by and responded to the officers' shouts. At this point, the officers had specific, articulable facts to support a well-founded suspicion that Davis was in violation of his probation. *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc).[2] Therefore, the ensuing search did not violate his Fourth Amendment rights.

## 2. Sufficiency of the Evidence

Davis next contends that there was insufficient evidence to convict him of possession of a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1), possession of ammunition as a convicted felon in violation of 18 U.S.C. § 922(g)(1), and possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D). We hold that the evidence presented at trial, viewed in the light most favorable to the prosecution, permitted a rational jury to find the essential elements of the charged offenses beyond a reasonable doubt.

---

[2] This permitted not only search of Davis's room, but also a "protective sweep" search of other areas in the house like the storage area where there could be threat to officer safety. Davis does not challenge the scope of the search once officers entered the house; he challenges only whether they had adequate grounds to enter.

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc).

First, there was sufficient evidence for a rational trier of fact to find that Davis possessed the rifle found in the storage room adjacent to his bedroom. The gun was found in plain view in a small, closet-like room, a mere 15 feet from Davis's bedroom. The home's owner testified that after Davis moved into the home, she stopped using the second floor of the house, where Davis's bedroom and the storage room were located. Davis was the only one who lived upstairs, and she considered it his living space. The marijuana packages and baggies found in Davis's room were like the packages found near the weapon—similar bags and weight. Also, a scale was found in the storage area, a common tool of a drug dealer. Once the drugs in the storage area were linked to Davis, it was reasonable to infer that the rifle next to those drugs was connected to him as well. Moreover, Davis had told his landlord that it was easier to be a drug dealer than to work at KFC, and that people "on the street" need guns to protect themselves. The evidence, viewed in the light most favorable to the government, was sufficient for a rational jury to conclude that Davis had more than "[m]ere proximity" to the firearm; he possessed it. *United States v. Chambers*, 918 F.2d 1455, 1459 (9th Cir. 1990); *see also United States v. Thongsy*, 577 F.3d 1036, 1041 (9th Cir. 2009).

4

Second, the government presented evidence sufficient for a rational jury to find that Davis possessed the bullet found in his dresser, the evidence that supported the conviction for possession of ammunition. The bullet was found mixed in with his clothes, in a dresser that contained his clothes and Social Security card, in Davis's room. Despite that Davis disclaimed ownership of the dresser in which he kept his clothes, a rational jury could conclude that Davis possessed the bullet found in the dresser in his room amidst his clothing. *See Thongsy*, 577 F.3d at 1041.

Third, Davis's summary of argument challenges the sufficiency of evidence for the charge of drug possession with intent to distribute, but Davis does not adequately discuss the issue in his briefs. The issue is waived. *Cf. Ghahremani v. Gonzales*, 498 F.3d 993, 997 (9th Cir. 2007). However, even if this issue were considered, the box of baggies and the marijuana found in Davis's room, the similar marijuana baggies found in the storage area along with the scale and gun, and Davis's comment to his landlord that working at KFC was harder than dealing drugs, together was sufficient evidence to show not only his possession of the marijuana but intent to distribute it.

**3. Government's Opening Statement and Closing Argument**

5

Davis contends that the government improperly labeled him as a "drug dealer" during opening statements and closing argument and therefore violated his due-process rights. We review for plain error and conclude there was no error in the government's statements. *See United States v. Rude*, 88 F.3d 1538, 1547–48 (9th Cir. 1996); *United States v. Bracy*, 67 F.3d 1421, 1431–32 (9th Cir. 1995). The government was merely stating what it thought the evidence showed.

## 4. Sentencing

Davis challenges his sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), because he contends that two of his predicate convictions resulted from offenses that were not "committed on occasions different from one another." § 924(e)(1). We take judicial notice of the state-court documents submitted by the government on appeal "because those documents have a direct relationship to [Davis's] appeal," *Smith v. Duncan*, 297 F.3d 809, 815 (9th Cir. 2002), *overruled on other grounds by Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005), and are "not subject to reasonable dispute," *Castillo-Marin*, 684 F.3d 914, 925 (9th Cir. 2012) (quoting Fed. R. Evid. 201(b)). In pleading guilty to the 2006 charges, Davis agreed that the statement of probable cause would form the factual basis for his plea, and we consider this statement in assessing Davis's prior convictions for the purpose of § 924(e)(1). *Cf. United States v. Almazan-Becerra*,

6

537 F.3d 1094, 1098 (9th Cir. 2008). We conclude that Davis's two offenses were separate offenses under the Armed Career Criminal Act because they represented separate criminal offenses that were "temporally distinct." *See United States v. Phillips*, 149 F.3d 1026, 1031 (9th Cir. 1998); *United States v. Antoine*, 953 F.2d 496, 498 (9th Cir. 1991).

**AFFIRMED.**[3]

---

[3] We decline to entertain a series of motions filed by Davis before he was represented by counsel, *see* Dkt. Nos. 8, 14, 16, 19, 20, 23, 24, 25, 30, because the court had not granted him permission to proceed *pro se*. *See* 9th Cir. R. 4-1(d), 42-1; *see also Martinez v. Court of Appeal*, 528 U.S. 152, 163–64 (2000).